UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NATHANIEL STEPHEN
ULLOM,

    Plaintiff,

v.                                       Case No. 2:20-cv-266-JLB-NPM

BILL PERRY & ASSOCIATES, INC.
and WILLIAM PERRY,

    Defendants.

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's (Renewed) Motion for Default Judgment (Doc. 23), and Plaintiff Nathaniel Stephen Ullom's affidavits (Docs. 23-2, 28). Plaintiff served a copy of the Amended Complaint and the renewed motion via U.S. Mail on Defendants Bill Perry & Associates, Inc. ("BP&A"), and William Perry. (Doc. 22, p. 8; Doc. 23, p. 12).[1] No response was filed to the Amended Complaint or the

---

[1] "No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." Fed. R. Civ. P. 5(a)(2). "This exception does not apply where the changes in [an] amended complaint are not substantial, *i.e.*, do not assert new claims nor materially alter the claims asserted or the relief sought." *CliC Goggles, Inc. v. Morrison*, No. 6:15-cv-621-Orl-28GJK, 2016 WL 7665442, *2 (M.D. Fla. June 2, 2016). While the former collective action allegations have been removed, the Amended Complaint still only contains one count for failure to pay overtime compensation. (*Compare* Doc. 1 *and* Doc. 22). Therefore, service was not required, and it merely served as another reminder to Defendants about their need to appear and defend, which they have not.

motion and the response times for both have lapsed. On May 5, 2021, the Court held a hearing on the motion, and though Defendants were provided notice (Doc. 24), they did not appear. *See* Fed. R. Civ. P. 55(b)(2)(D). For the reasons stated below, the Court recommends the motion be granted.

## I. BACKGROUND

### A. Substantive Background

Plaintiff sues for unpaid overtime wages, including reimbursement for vehicle expenses, under the FLSA. (Doc. 22). From about March 2016 through January 2020, Plaintiff worked as an hourly-paid security guard for Defendants. (Doc. 22, ¶¶ 18, 31). As part of his duties, Plaintiff performed roving patrol in his own vehicle, towed cars, wrote tickets, provided security services, protected the premises of Defendants' clients, escorted fired employees from Defendants' clients' premises, and provided security services for concerts and private events. (Doc. 22 ¶ 19). Plaintiff alleges he worked in excess of 40 hours in one or more workweeks, for which he was not compensated at the statutory rate of one and one-half times his regular rate of pay. (Doc. 22 ¶¶ 20-21, 32).

### B. Procedural Background

On April 15, 2020, Plaintiff filed a Collective Action Complaint bringing claims under the Fair Labor Standards Act ("FLSA") for failure to pay overtime wages. (Doc. 1). The Clerk entered defaults against both Defendants BP&A and

William Perry (Doc. 15, 16). Plaintiff then filed a Motion for Default Judgment against the Defendants. (Doc. 20). The Court denied the motion without prejudice because: (1) Plaintiff had not moved to certify a collective, and it was not clear whether he was seeking default judgment only for himself; and (2) it was not clear whether Plaintiff was claiming he was individually covered by the FLSA and, if not, whether he had sufficiently alleged a covered "enterprise" under the FLSA. (Doc. 21).

Plaintiff subsequently amended his Complaint to address the Court's concerns. (Doc. 22). In the Amended Complaint, Plaintiff removed the collective-action allegations from the pleading, removed references to individual coverage under the FLSA, and enumerated certain items Defendants used in their business which were manufactured outside the state of Florida. (Doc. 23, pp. 2-3). Specifically, Plaintiff alleged that Defendants earned over $500,000 per year in gross revenues, and that two or more of its employees used "android smartphones which the Company supplied to Plaintiff and other security guards, [and] computers … that Plaintiff used, which, upon information and belief, were manufactured outside of the state of Florida." (Doc. 22 ¶¶ 15-16). Defendants have not responded to the Amended Complaint and the time to do so is expired. *See* Fed. R. Civ. P. 15(a)(3).

Plaintiff then filed a renewed motion for default judgment. (Doc. 23). Plaintiff seeks $47,802.83 in overtime wages plus an equal amount of liquidated damages,

for a total of $95,605.66. (Doc. 23, pp. 3, 11; Doc. 23-1). Should default judgment be entered, Plaintiff also requests leave to file a motion for reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b). (Doc. 23, pp. 3-4, 11; Doc. 23-1).

## II.  LAW AND ANALYSIS

"When a defendant has failed to plead or defend, a district court may enter judgment by default. Fed. R. Civ. P. 55(b)(2). Because of our 'strong policy of determining cases on their merits,' however, default judgments are generally disfavored." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244-45 (11th Cir. 2015). Entry of a default judgment is warranted only when there is a sufficient basis in the pleadings for judgment to be entered. *Id.* at 1245.

A sufficient basis is akin to facts sufficient to survive a motion to dismiss for failure to state a claim. *Id.* So, when evaluating the sufficiency of the alleged facts, the Court looks to whether the complaint contains sufficient factual matter that when accepted as true, states a claim for relief that is plausible on its face. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). A defaulted defendant is deemed to admit to any well-pleaded allegations of fact "other than one relating to the amount of damages." *See* Fed. R. Civ. P. 8(b)(6); *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).

### A. Overtime Wages

To prevail on an overtime wage claim, Plaintiff must demonstrate: (1) he was employed by the Defendants; (2) his employer was an enterprise engaged in commerce; and (3) his employer failed to pay him the minimum wage as required by the FLSA. *See Martinez v. Askins & Miller Orthopaedics*, No. 8:18-cv-2442-T-02CPT, 2019 WL 1117036, *2 (M.D. Fla. Mar. 11, 2019); *Cain v. One Stop PC Help, Inc.*, No. 8:15-cv-1071-T-27TBM, 2017 WL 10241541, *3 (M.D. Fla. Jan. 17, 2017), *report and recommendation adopted*, No. 8:15-cv-1071-T-27TBM, 2017 WL 10241539 (M.D. Fla. Feb. 6, 2017).

The FLSA defines an employer as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). And "person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). As such, personal liability as an FLSA employer extends to individual corporate officers who have "'operational control of a corporation's covered enterprise,' which may be involvement in the day-to-day operation of the company or direct supervision of the employee at issue." *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1237 (11th Cir. 2013) (citation omitted). To determine whether a defendant is an employer under the FLSA, a court looks to whether the alleged employer "(1) had the power to hire and fire the employee[], (2) supervised and

controlled [the employee's] work schedule[] or condition[] of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Rodriguez v. Jones Boat Yard, Inc.*, 435 F. App'x 885, 888 (11th Cir. 2011).

Plaintiff alleges William Perry regularly held and exercised the authority to: (a) hire and fire employees of BP&A; (b) determine the work schedules for the employees of BP&A; (c) determine the pay rates for the employees of BP&A; and (d) control the finances and operations of BP&A. (Doc. 22 ¶ 10). He also alleges BP&A and William Perry, by virtue of his authority, were his "employers" for purposes of FLSA liability. (Doc. 22 ¶¶ 11-13). Based on the well-pleaded allegations, the Court finds both Defendants employed Plaintiff from about March 2016 through about January 2020. (Doc. 22 ¶ 18). And Plaintiff established he worked for Defendants as an hourly-paid security guard. (Doc. 22 ¶ 18). Thus, Plaintiff satisfied the first element.

As to enterprise coverage, a plaintiff must show the enterprise: "(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii). To satisfy these requirements, Plaintiff

alleges Defendants employed two or more employees who handled, sold, or otherwise worked on goods or materials that had been moved in or produced for commerce, such as android smartphones, which the company supplied to Plaintiff and other security guards, and computers that Plaintiff used when performing his duties. (Doc. 22 ¶¶ 14, 16). Plaintiff also alleges the annual gross revenue of BP&A was in excess of $500,000 during the relevant time periods. (Doc. 22 ¶ 15). Based on Plaintiff's well-pleaded allegations, the Court finds Defendants were employers engaged in interstate commerce.

Finally, a plaintiff must establish: (1) he actually worked in excess of a 40-hour workweek; and (2) the defendants did not pay him overtime wages for the work in excess of a 40-hour workweek. *Cain v. One Stop PC Help, Inc.*, No. 8:15-cv-1071-T-27TBM, 2017 WL 10241541, *3 (M.D. Fla. Jan. 17, 2017), *report and recommendation adopted*, No. 8:15-cv-1071-T-27TBM, 2017 WL 10241539 (M.D. Fla. Feb. 6, 2017). Plaintiff alleges he worked for Defendants from about March 2016 through about January 2020. (Doc. 22 ¶ 18). He further alleges Defendants did not pay him any overtime wages and failed to do so in two ways: by not paying overtime premiums and by not reimbursing vehicle expenses. (Doc. 22 ¶¶ 21-25, 27, 31). Accordingly, the Court finds Plaintiff established all the elements for his FLSA overtime wage claim.

### B. Damages

An employer who violates the minimum wage or overtime provisions of the FLSA is liable for the employee's unpaid overtime compensation, including reasonable vehicle expenses incurred while working overtime, and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b); *see Ramos-Barrientos v. Bland*, 661 F.3d 587, 594 (11th Cir. 2011) (noting Department of Labor's anti-kickback regulation, 29 C.F.R. § 531.35, "prohibits any arrangement that 'tend[s] to shift part of the employer's business expense to the employees ... to the extent that it reduce[s] an employee's wage below the statutory minimum.'") (quoting *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972)); *see, e.g.*, *Benton v. Deli Mgmt., Inc.*, 396 F. Supp. 3d 1261, 1273 (N.D. Ga. 2019) (holding employer "should at least bear a reasonable portion of the costs incurred by Plaintiffs to operate their vehicles," which are "tool[s] of the trade" when used for the employer's business); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, *4 (S.D. Ohio Nov. 6, 2018) (holding that the vehicle costs had to be reimbursed in order to avoid a decrease in the minimum wage and overtime paid); *Burton v. DRAS Partners, LLC*, No. 2019-cv-02949, 2019 WL 5550579, *4 (N.D. Ill. Oct. 27, 2019) (same, citing *Brandenburg*).

Plaintiff bears the burden of proving the amount of damages to be awarded and may establish the amount by affidavit. *Cabrera v. Fla. Express Bus, LLC*, No.

8:13-cv-1850-T-35EAJ, 2015 WL 12844403, *2 (M.D. Fla. June 23, 2015), *report and recommendation adopted*, No. 8:13-cv-1850-T-35EAJ, 2015 WL 12853103 (M.D. Fla. July 10, 2015). In support of his claims, Plaintiff relies on his affidavits (Docs. 22-2, 23-1, 28), which the Court finds contain sufficient evidence to establish the amount and extent of the work he performed and an adequate basis for calculating his damages. *Miranda v. Palms Hotels & Villas, LLC*, No. 6:06-cv-1902-Orl-28KRS, 2007 WL 3232242, *4 (M.D. Fla. Oct. 31, 2007) (finding an employee's affidavit carries her burden of proving the amount and extent of her work and a basis for calculating damages when the employers' records are inaccurate or inadequate).

Based on his affidavit, Plaintiff established he worked without receiving overtime compensation—he only received straight compensation for overtime hours. He also alleges he was not reimbursed for reasonable vehicle expenses. (Doc. 23-1 ¶¶ 5-10, 12-13, 15-18, 20; Doc. 28 ¶ 6). Plaintiff seeks overtime wage compensation for these hours worked, including vehicle expenses based on the applicable IRS mileage rates, and an equal amount of liquidated damages. (Doc. 22 ¶¶ 32-33, 36; Doc. 23-1 ¶ 18).

Plaintiff calculated his damages for part of 2017 and the full years of 2018 and 2019 based on his applicable hourly rates for each year, estimated number of overtime hours, and estimated number of miles driven on average that were not

compensated. (Doc. 23-1 ¶¶ 5-18). Because Defendants did not provide accurate time records of his hours worked,[2] Plaintiff, in his affidavit, estimates he worked 5 to 7 days per week and 12 hours per day. (Doc. 23, pp. 8-9; Doc. 23-1 ¶¶ 5, 10-12). Therefore, he estimates he worked 84 hours, 72 hours, or 60 hours in each week in which he worked overtime. (Doc. 23-2 ¶¶ 6, 10). However, he was not owed overtime in 8 weeks per year. (Doc. 23-2 ¶¶ 6, 10). Based upon his reasonable recollection of his schedule, Plaintiff estimates he worked 19 seven-day weeks, 19 six-day weeks, and 6 five-day weeks. (Doc. 23-2 ¶ 10). His rate of pay in 2017 was $12.00 per hour and in 2018 and 2019, his rate was $13.00 per hour. (Doc. 23-2 ¶ 13).

Plaintiff also claims reimbursement for vehicle expenses at the applicable IRS mileage rates that were effectively and wrongly "kicked back" to his employer in weeks in which he worked overtime. (Doc. 22 ¶¶ 23-25, 33; Doc. 23, pp. 5, 7, 9-10; Doc. 23-1 ¶ 14); *e.g.*, *Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 716 (E.D. Pa. 2014) (holding that because employer failed to keep detailed contemporaneous records of its delivery drivers' actual expenses, employees were entitled to be reimbursed at the IRS rate). This rate was $.535 per mile in 2017, $.545 per mile in 2018, and $.58 in 2019. (Doc. 23-2 ¶ 14).

---

[2] Plaintiff notes that although he was paid straight time for his overtime hours, when he reviewed his time records later, he noticed that the overtime hours were deleted from the records he could access. (Doc. 23-1 ¶ 20).

Plaintiff estimated that he drove approximately 50 miles per workday, which excludes commuting mileage. He also explained how he came up with this figure: he typically drove about 11 to 12 hours per day at about 5 miles per hour while he patrolled parking lots and in between patrol locations, which could be as far as 45 minutes between locations. (Doc. 28 ¶¶ 7-8). He arrived at a "conservative" estimate of 50 miles by multiplying his lowest speed of 5 mph times 10 hours of driving per day. (Doc. 28 ¶ 9). Altogether, he came up with the following figures:

| | |
|---|---|
| 2017 mileage owed to remedy kickback from overtime | $5,303.38* |
| 2017 overtime premiums owed on paid overtime hours | $6,643.20 |
| 2018 mileage owed to remedy kickback from overtime | $7,491.25* |
| 2018 overtime premiums owed on paid overtime hours | $10,166.00 |
| 2019 mileage owed to remedy kickback from overtime | $8,033.00 |
| 2019 overtime premiums owed on paid overtime hours | $10,166.00 |
| **Total:** | **$47,802.83** |

(Doc. 23-1, ¶¶ 15-18).

Plaintiff mistakenly used the 2018 IRS rate in two mileage calculations for 2017. (Doc. 23-1 ¶¶ 14-15). Therefore, the 2017 mileage owed to remedy kickback from overtime should be reduced to $5,245.68. [3] It also appears Plaintiff miscalculated the mileage in 2018 for 19 six-day weeks. (Doc. 23-2 ¶ 16). This

---

[3] Using $.535 per mile as the IRS mileage rate consistently for 2017, using Plaintiff's 3-part breakdown would result in: $2,518.51 + $2,158.73 + $568.44 = $5,245.68.

11

number should be $3,106.50 instead of $3,049.50. Therefore, the 2018 mileage owed to remedy kickback from overtime should be increased to $7,548.25.[4]

Accordingly, the Court came up with the following corrected figures, with a nominally different total:

| | |
|---|---|
| 2017 mileage owed to remedy kickback from overtime | $5,245.68 |
| 2017 overtime premiums owed on paid overtime hours | $6,643.20 |
| 2018 mileage owed to remedy kickback from overtime | $7,548.25 |
| 2018 overtime premiums owed on paid overtime hours | $10,166.00 |
| 2019 mileage owed to remedy kickback from overtime | $8,033.00 |
| 2019 overtime premiums owed on paid overtime hours | $10,166.00 |
| Total: | $47,802.13 |

(Doc. 23-1, ¶¶ 15-18).

As such, the Court recommends awarding $47,802.13 for unpaid wages and vehicle expenses. The Court also recommends awarding an equal amount of corresponding liquidated damages, for a combined total of $95,604.26.

## III.  CONCLUSION

For the above reasons, the Court finds Plaintiff has established a violation of the overtime wage provisions of the FLSA. Based on his affidavits, Plaintiff also established entitlement to the damages he seeks.

Accordingly, it is **RESPECTFULLY RECOMMENDED**:

(1)  The Motion for Default Judgment (Doc. 23) be **GRANTED**.

---

[4] $3,624.25 + $3,106.50 + $817.50 = $7,548.25.

(2) Plaintiff be awarded $47,802.13 and an equal amount for liquidated damages for a total of $95,604.26.

(3) Plaintiff's request for leave to file a motion for reasonable attorneys' fees and costs (*See* Doc. 23, pp. 4, 11) be **DENIED as moot**. As a matter of course, Plaintiff may request attorney's fees and expenses pursuant to Federal Rule of Civil Procedure 54(d) and Middle District of Florida Local Rule 7.01.

Reported in Fort Myers, Florida on May 26, 2021.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**